UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10600-PBS

RHODA PACKER, AS EXECUTRIX OF )
THE ESTATE OF ARCHIE PACKER,   )
            Plaintiff,         )
                               )
v.                             )     **FIRST AMENDED**
                               )     **COMPLAINT & JURY DEMAND**
REGISTER & GRILLE              )
MANUFACTURING CO., INC.,       )
            Defendant.         )
                               )

## PARTIES

1.  Archie Packer is a deceased individual who resided and did business as Ropack Printing Company ("Ropack") at the address of 37 Thatcher Street, Westwood, Massachusetts. The Plaintiff, Rhoda Packer, as Executrix of the Estate of Archie Packer, resides in Needham, Massachusetts.

2.  On information and belief, the Defendant, Register & Grille Manufacturing Co., Inc. ("R&G") is a foreign corporation with business address of 202 Norman Avenue, Brooklyn, New York 11222.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

3.  Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1332. There is complete diversity of the parties, and the amount in controversy exceeds 75,000.00.

4. As documented by the eight (8) open invoices attached hereto and incorporated herein as **Exhibit 1**, and as recounted in Paras. 22 through 26 below, the present case is a contract action which concerns a principal balance of $87,937.38. Accordingly, the amount in controversy exceeds $75,000.00.

5. R&G is a New York citizen.

6. The Plaintiff is a citizen of Massachusetts. She resides full time in Massachusetts, and has not been a citizen of New York state or lived in New York state since 1990. At present, and from a date preceding the filing of the present action, Rhoda Packer resides and has resided full time in Needham, Massachusetts.

7. Since 1990, well before the dates of the open invoices and work referenced thereon, neither Archie Packer nor Rhoda Packer has been a citizen of New York state, nor have they lived there during that time.

8. From at least 1990 until his passing on December 31, 2002, Archie Packer resided with his wife at his homes in Westwood, Massachusetts and Pompano Beach, Florida. During that time, Archie and Rhoda Packer were citizens of Florida.

9. The estate of Archie Packer has had no connection to New York. It was probated in the state of Florida.

Personal Jurisdiction

10. Massachusetts may exercise personal jurisdiction over R&G because it caused an action in law or equity arising from that its transacting of business in this commonwealth.

11. During the period from 2001 to 2003, when Archie Packer performed the services which are the subject of this suit, he conducted virtually all of Ropack's business out of his home office in Westwood Massachusetts, including the work performed for R&G. Archie Packer forwarded the open invoices at issue from Westwood, Massachusetts.

12. Also during that period, R&G continually contacted Archie Packer concerning the parties' business relationship, while Archie Packer was in Westwood, Massachusetts. Such communications included but were not necessarily limited to several dozens of telephone calls, written correspondence, and payments which the Defendant forwarded to Archie Packer in Massachusetts, including several payments which were returned for insufficient funds, contributing to the overdue balance.

13. The claim at issue arises out of and is related to the Defendant's conduct in Massachusetts.

14. R&G's contacts with Ropack constituted far more than "an isolated and minor transaction" or "the most incidental commercial contact." Rather, there was an ongoing business relationship for several years while Ropack resided and performed its services in Massachusetts. Moreover, there were substantial funds changing hands. The principal unpaid balance for invoices dated from September 15, 2001 to November 5, 2002 alone is $87,937.38, exclusive of contractual interest charges and fees incurred because of the insufficiency of R&G's funds to cover its checks.

15. It will be fair and reasonable for R&G to defend itself in Massachusetts. R&G engaged in an ongoing contract over a period of several years with a Massachusetts based company, which provided services which were performed in Massachusetts for R&G's benefit.

16. The Plaintiff has a substantial and legitimate interest in obtaining convenient and effective relief. Ropack performed substantial services in Massachusetts, for which it is contractually entitled to substantial compensation. Plaintiff resides full time in Massachusetts, and has a legitimate interest to collect receivables to enhance her husband's estate. The interests of the judicial system and all sovereigns will be served by permitting the present case, based on unpaid services performed in Massachusetts, to proceed without delay by jurisdictional challenge.

Venue

17. A substantial part of the acts and omissions giving rise to the claims asserted herein took place within this judicial district. Further, the Defendant is subject to personal jurisdiction pursuant to M.G.L. c. 223A. Therefore, venue is proper in this District under 28 U.S.C. § 1391.

18. Virtually all of Ropack's services for which Plaintiff seeks payment occurred in this district. Archie Packer forwarded the open invoices at issue from Westwood, Massachusetts. During the period from 2001 to 2003, when Archie Packer performed the services which are the subject of this suit, he conducted virtually all of Ropack's business out of his home office in Westwood, including the work performed for the Defendant.

19. Also during that period, R&G continually contacted Archie Packer concerning the parties' business relationship, while Archie Packer was in Westwood, Massachusetts. R&G forwarded telephone calls, written correspondence, and payments to this district, including several payments which were returned for insufficient funds, contributing to the overdue balance.

4

## FACTS

20. For several years, Ropak and R&G had an ongoing contractual relationship whereby Ropak provided advertising and printing services in exchange for monetary compensation.

21. R&G had a practice of paying Ropack's invoices by forwarding a sequence of post-dated checks, many of which were later returned for insufficient funds. In some cases, replacement checks also "bounced." In addition to paying with corporate checks, R&G also utilized personal checks and credit cards.

22. From the period continuing from on or about September 15, 2001 until on or about November 5, 2002, pursuant to the parties' agreement and the services which Ropak provided to R&G, Ropak delivered to R&G eight (8) invoices totaling $121,737.38, which remain partially -- or in most case wholly -- unpaid. True and accurate copies of these eight (8) open invoices are attached hereto and incorporated herein as **Exhibit 1**.

23. To date, R&G has made payment toward these invoices in an amount totaling only $33,800.00. In addition, there have been fees incurred because of the insufficiency of R&G's funds to cover its checks. Exclusive of those fees, the principal amount of the balance R&G owes to Ropak totals $87,937.38.

24. With respect to Invoice No. 5028 dated September 15, 2001 in the amount of $28,500.00, R&G tendered thirteen (13) checks each in the amount of $2,850.00. Because five (5) of these checks, including two (2) replacement checks, were returned for insufficient funds, R&G has paid only $22,800.00 toward the $28,500.00.

25. With respect to Invoice No. 5900 dated October 25, 2002 in the amount of $35,000.00, R&G tendered has tendered one (1) check totaling only $1,000.00 (less than 3% of the amount due).

26. With respect to the other six (6) open invoices included in **Exhibit 1**, R&G has made no payment whatever, except for a check drawn on the personal account of Dianne Kavanaugh dated September 10, 2002 in the amount of $10,000.00, which appears to be a general deposit for printing services. Even accounting for this amount, the principal amount of the balance R&G owes to Ropak totals $87,937.38.

27. Pursuant to the agreement of the parties, and as expressly stated on the invoices, monthly interest charges of one and one-half percent (1 ½ %) would be added to any past due balances which remained unpaid after forty-five (45) days.

28. On or about June 23, 2003, Plaintiff's counsel forwarded correspondence to R&G requesting its attention to the substantial unpaid balance it owed to Ropak. A true and accurate copy of this correspondence, including enclosures, is attached hereto and incorporated herein as **Exhibit 2**.

29. In the more than nine (9) months since R&G received the **Exhibit 2** correspondence, R&G has remitted no amount toward its remaining contract balance, nor has it forwarded any substantive correspondence indicating its accounting of the proper amount due, despite repeated requests by Plaintiff's counsel.

## COUNT I - BREACH OF CONTRACT

30. Plaintiff hereby incorporates by reference Paragraphs 1 through 29.

31. Ropack fulfilled its obligations under the agreement between the parties.

32. R&G has breached the agreement by, *inter alia*, failing, refusing, and neglecting to make timely payments.

33. Plaintiff has made due and proper demand for R&G to honor its contractual obligations, but R&G has failed, refused, and neglected to do so.

34. As a direct and proximate result of R&G's breach of contract, Ropack incurred substantial and continuing damages, including but not limited to those damages referenced in Paragraphs 22 through 27 above.

## COUNT II - BREACH OF IMPLIED CONTRACT

35. Plaintiff hereby incorporates by reference Paragraphs 1 through 34.

36. Ropack undertook in good faith to complete the advertising and printing services referenced on the unpaid invoices.

37. Ropack expended significant resources, with a reasonable expectation that R&G would compensate Ropack.

38. R&G, having reason to believe that Ropack was acting on such expectation, permitted Ropack to expend the resources referenced above without objection.

39. Therefore, Ropack had a contract implied-in-fact with R&G.

40. As a direct and proximate result of R&G's breach of implied contract, Ropack has incurred substantial and continuing damages, including but not limited to those damages referenced in Paragraphs 22 through 27 above.

## COUNT III - UNJUST ENRICHMENT (QUANTUM MERUIT)

41. Plaintiff hereby incorporates by reference Paragraphs 1 through 40.

42. R&G has been unjustly enriched by Ropack's furnishing of advertising and printing services, but has not adequately compensated Plaintiff.

43. As a direct and proximate result of R&G's unjust enrichment, Ropack incurred substantial and continuing damages, including but not limited to those damages referenced in Paragraphs 22 through 27 above.

44. Equity and good conscience require judgment against R&G in an amount to be determined at Trial.

## COUNT IV - ACCOUNT STATED

45. Plaintiff hereby incorporates by reference Paragraphs 1 through 44.

46. At all times relevant hereto, R&G had an account with Ropack in connection with Ropack's furnishing of advertising and printing services.

47. The invoices, attached hereto and incorporated herein as **Exhibit 1**, constitute a statement of R&G's account with Ropack.

48. R&G has failed to object to this account stated within a reasonable time period.

49. R&G assents to the account stated in the amount reflected in **Exhibit 1** and referenced in Paragraphs 22 through 27 above.

## COUNT V - UNFAIR TRADE ACTS

50. Plaintiff hereby incorporates by reference Paragraphs 1 through 49.

51. At all times relevant hereto, Ropack and R&G were engaged in commerce within the meaning of M.G.L. c. 93A.

52. On information and belief, it has become apparent that R&G did not act in good faith in connection with their agreement. R&G deliberately violated the agreement by refusing to pay the undisputed balance. In addition, R&G tendered checks for which it did not have sufficient funds to cover, and failed to make good on checks returned for insufficient funds.

53. The above described breach of contract, breach of implied contract, unjust enrichment, account stated, and bad faith conduct constitute unfair or deceptive acts and practices in violation of M.G.L. c. 93A §§ 2 and 11 which were, upon information and belief, knowingly and wilfully performed.

54. As a direct and proximate result of R&G's unfair or deceptive acts and practices, Ropack incurred substantial and continuing damages, including but not limited to those damages referenced in Paragraphs 22 through 27 above.

55. R&G has failed to tender any reasonable resolution of this dispute.

WHEREFORE, the Plaintiff, Rhoda Packer, as Executrix of the Estate of Archie Packer, respectfully demands that the Court:

(1) Award Judgment on Counts I through IV against the Defendant, Register & Grille Manufacturing Co., Inc., in an amount to be determined at Trial, plus interest, costs, and attorneys' fees.

(2) Award Judgment on Count V against the Defendant, Register & Grille Manufacturing Co., Inc., in an amount to be determined at Trial, plus interest, costs, attorneys' fees, and treble damages pursuant to M.G.L. c. 93A.

(3) Grant such additional relief as the interests of justice and equity demand.

## JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,
The Plaintiff, Rhoda Packer,
as Executrix of the Estate of Archie Packer,
By his Attorneys,

_____
Louis Movitz, BBO #564780
PACKER AND MOVITZ, P.C.
11 Beacon Street, Suite 615
Boston, MA 02108
(617) 227-5111

## CERTIFICATE OF SERVICE

I, Louis Movitz, Plaintiff's counsel, hereby certify that I served a true copy of the above document upon Defendant's counsel by first class mail on the __6TH__ day of __July__, 2004.

_____
Louis Movitz

LM\rd\ropack\amended complaint