IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| ) | CIVIL ACTION NO: 04-10600 PBS |
| RHODA PACKER, ) | |
| as Executrix of the Estate of Archie Packer ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| REGISTER & GRILLE ) | |
| MANUFACTURING CO., INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

**DEFENDANT'S ANSWER, DEFENSES AND COUNTERCLAIM**

NOW COMES the defendant, Register & Grille Manufacturing Co., Inc., and hereby responds to the plaintiff's Complaint as follows, denying all factual allegations not specifically admitted.

1.  The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

2.  Admits.

3.  The defendant does not have sufficient information or knowledge to form a belief as to whether there is complete diversity, and otherwise denies the allegations in this paragraph.

4.  Denies.

5.  Admits.

6.  The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

7.   The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

8.   The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

9.   The defendant admits that Archie Packer's estate was probated in Florida, and otherwise denies the allegations in this paragraph.

10. Denies.

11. The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

12. The defendant admits contacting Archie Packer in Westwood, MA by telephone and mail concerning the business between Mr. Packer and Register & Grille, forwarding payment to Mr. Packer at that address, including checks which were returned for insufficient funds, and otherwise denies the allegations in this paragraph.

13. Denies.

14. The defendant admits the parties had a business relationship and that defendant gave Archie Packer funds during that period, denies owing $87,937.38, or any other amount of money, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

15. The defendant denies that it is fair and reasonable for it to defend itself in Massachusetts, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

16. The defendant denies that the plaintiff has any legitimate interest in obtaining relief, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

17. The defendant denies that venue is proper, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

18. The defendant does not have sufficient information or knowledge to form a belief as to the truth of this paragraph.

19. The defendant admits contacting Archie Packer in Westwood, MA by telephone and mail concerning the business between Mr. Packer and Register & Grille, forwarding payments to Mr. Packer at that address, including checks which were returned for insufficient funds, and otherwise denies each and every allegation in this paragraph.

20. The defendant admits Ropack and Register & Grille had an ongoing business relationship for years, and otherwise denies each and every allegation in this paragraph.

21. The defendant admits Register & Grille sometimes gave Ropack post-dated checks, an idea that was Archie Packer's, some of which were returned for insufficient funds and that in some cases replacement checks also were returned for insufficient funds, and that Register paid with a personal check on one occasion, and otherwise denies each and every allegation in this paragraph.

22. The defendant admits that Exhibit 1 contains copies of eight invoices sent to the defendant, and otherwise denies each and every allegation in this paragraph.

23. Denies.

24. Denies.

25. Denies.

26. Denies.

27. Denies.

28. The defendant admits receiving a copy of plaintiff's counsel's June 23, 2003 letter, and otherwise denies each and every allegation contained in this paragraph.

29. The defendant admits not sending the plaintiff any monies after receiving plaintiff's counsel's letter of June 23, 2003, and otherwise denies each and every allegation in this paragraph of the complaint.

30. The defendant repeats and realleges each and every response to paragraphs 1 through 29 as if set forth herein at length.

31. Denies.

32. Denies.

33. Denies.

34. Denies.

35. The defendant repeats and realleges each and every response to paragraphs 1 through 34 as if set forth herein at length.

36. Denies.

37. Denies.

38. Denies.

39. Denies.

40. Denies.

41. The defendant repeats and realleges each and every response to paragraphs 1 through 40 as if set forth herein at length.

42. Denies.

43. Denies.

44. Denies.

45. The defendant repeats and realleges each and every response to paragraphs 1 through 44 as if set forth herein at length.

46. The defendant admits that it had an account with Ropack and, until Archie Packer's death when the defendant learned that this account was deceptive and fraudulent, the defendant believed that this account had been maintained in good faith, and otherwise denies each and every allegation in this paragraph.

47. Denies.

48. Denies.

49. Denies.

50. The defendant repeats and realleges each and every response to paragraphs 1 through 49 as if set forth herein at length.

51. Admits.

52. The defendant admits that some checks were tendered with insufficient funds, and otherwise denies each and every allegation in this paragraph.

53. Denies.

54. Denies.

55. Denies.

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE

With respect to each and every Count of the plaintiff's Complaint, the plaintiff has failed to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

The plaintiff has brought this action with unclean hands and is therefore barred from recovery.

THIRD AFFIRMATIVE DEFENSE

The plaintiff is estopped by its own and/or Archie Packer's actions and omissions from asserting any of the claims alleged.

FOURTH AFFIRMATIVE DEFENSE

If the plaintiff has suffered any damages, which the defendant denies, her claims for relief are barred because such damages are a result of the conduct of the plaintiff and/or Archie Packer.

FIFTH AFFIRMATIVE DEFENSE

The defendant's actions and conduct were lawful and justified.

SIXTH AFFIRMATIVE DEFENSE

The defendant's contractual obligations have been discharged.

SEVENTH AFFIRMATIVE DEFENSE

The plaintiff has failed to bring this action in a timely manner causing prejudice to the defendant and is therefore barred from recovery under the doctrine of laches and waiver.

## EIGHTH AFFIRMATIVE DEFENSE

The plaintiff has failed to mitigate her damages.

## NINTH AFFIRMATIVE DEFENSE

The plaintiff's breach of contract claim must fail due to a lack of consideration or privity, and Archie Packer's failure to perform any and all conditions precedent, concurrent or subsequent.

## TENTH AFFIRMATIVE DEFENSE

The plaintiff has breached the implied covenant of good faith and fair dealing and the plaintiff's claims are therefore barred.

## ELEVENTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the applicable statute of limitations.

## TWELFTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the statute of frauds.

## THIRTEENTH AFFIRMATIVE DEFENSE

The defendant did not act unfairly or deceptively in trade or commerce pursuant to M.G.L. Ch. 93A.

## FOURTEENTH AFFIRMATIVE DEFENSE

The defendant tendered payments to Archie Packer that the defendant has failed to properly account for.

## FIFTEENTH AFFIRMATIVE DEFENSE

The defendant tendered payments in full satisfaction of all monies ever legitimately due to Archie Packer.

SIXTEENTH AFFIRMATIVE DEFENSE

There is no subject matter jurisdiction.

SEVENTEENTH AFFIRMATIVE DEFENSE

Archie Packer failed to provide satisfactory service in accordance with his representations, and therefore was not entitled to further payment.

EIGHTEENTH AFFIRMATIVE DEFENSE

Archie Packer wrongly and deceptively billed the defendant for monies that he was not entitled to and for which he performed no service, and therefore had no entitlement to the amounts so billed.

NINTEENTH AFFIRMATIVE DEFENSE

To the extent that there may have been any contractual arrangement between the defendant and Archie Packer, Archie Packer breached that contract through his acts and omissions.

TWENTIETH AFFIRMATIVE DEFENSE

Venue in the District of Massachusetts is improper.

TWENTY FIRST AFFIRMATIVE DEFENSE

The plaintiff is barred as Archie Packer fraudulently billed the defendant for monies he had not earned.

TWENTY SECOND AFFIRMATIVE DEFENSE

Archie Packer breached the implied covenant of good faith and fair dealing and the plaintiff's claims are therefore barred.

TWENTY SECOND AFFIRMATIVE DEFENSE

The plaintiff's claims are wholly insubstantial, frivolous and not advanced in good faith in violation of M.G.L. Ch. 231, § 6F, whereby the defendant asserts that it is entitled to reasonable costs, expenses, attorney's fees and interest in defending this action.

WHEREFORE, the defendant demands that plaintiff's Complaint be dismissed, that costs and such further relief be awarded to the defendant, and that such further relief be provided to the defendant as this Court deems just.

**THE DEFENDANT CLAIMS A JURY TRIAL ON ALL COUNTS SO TRIABLE**

## COUNTERCLAIM

### FACTS

1.   At all relevant times, Register & Grille Manufacturing Co., Inc., (hereafter Register) is and was a New York corporation with its office and principal place of business at 202 Norman Avenue, Brooklyn, NY.

2.   On information and belief, the defendant Rhoda Packer is a Massachusetts citizen and resident and is the executor of the estate of her husband, Archie Packer.

3.   At all relevant times, Register is and has been a closely held corporation employing fewer than 12 people.  It manufactures high-end custom-made grilles and registers.  These are the sort of vent covers installed in larger commercial and government buildings covering the heating, ventilating and air-conditioning vents.

4.   At all relevant times, Register earned a substantial amount of its income from interstate commerce generated by advertisements in three trade publications:  Sweets

Catalogue (published by McGraw Hill in Parsippany, NJ), Blue Book (published by Blue Book in Jefferson, NY), and Interior Design (a magazine published in New York, NY).

5.   From the early 1960's until his early death in 1984, Andrew Kavanagh ran Register.

6.   On the untimely death of Andrew Kavanagh, Dianne Kavanagh decided to try her hand at running Register. Her brother, Perry LeRoy, came in as an officer and director. They have been running Register as its officers together with a small staff.

7.   Before his death in 1984, Andrew Kavanagh had been dealing directly with trade advertisers, including Sweets, Blue Book and Interior Design. When Dianne Kavanagh took over operation of Register, she understood from discussions with Sweets' employees that Sweets was discontinuing its art department's collaborative work with small customers including Register, and she understood Register needed to retain a printing professional. Sweets recommended Archie Packer to Dianne Kavanagh.

8.   At that time, Archie Packer, doing business as Ropack Printing, (hereafter "Ropack") lived in New York and operated a printing agency business in Valley Stream, NY.

9.   Dianne Kavanagh, acting on behalf of Register, retained Archie Packer/Ropack. Register and Ropack had no written contract or memorandum setting out the terms of Mr. Packer's services. The parties did have an oral agreement.

10. Under the terms of their agreement, Register and Archie Packer agreed that Mr. Packer would bill Register a fair professional charge for specific lay-out work for Register in setting up each upcoming year's catalogue. Most of the copies of this

catalogue were bound into the annual Sweets Catalogue.  The rest Register distributed to customers and potential customers.

11. Mr. Packer's work included modifying sections of the former ads or setting up new ones. Mr. Packer routinely came to Register's plant in Brooklyn where he consulted with Mrs. Kavanagh or Mr. LeRoy about modifying the past year's catalogue and setting up new sections of the catalogue for publication as the master for the coming year's catalogue.

12. Mr. Packer also delivered this master (which he had worked on with Register and separately billed them for) to an independent printer he selected so that the printer would print the multiple copies of the catalogue and deliver them annually to Sweets bindery for incorporation into the annual Sweets Catalogue.  The remainder of the catalogues went to Register for distribution to customers and potential customers.

13. There was an understanding and agreement that Mr. Packer would not charge for the printing work, the delivery of the master, or for any oversight regarding the printing and delivery from the printer.  Ropack and Register agreed and understood that Ropack could arrange to collect a commission or fee for this from the printer in the same manner that a travel agent would collect a fee in selling an airline ticket to a customer: the customer pays no more than the ticket price charged to the public at large and the agent receives commission from the airline.  In short, any payment to Ropack for arranging for the printer to receive or send inserts could come only from commissions to Ropack from the printer.

14. That agreement did not affect Ropack's right to charge and be paid for its work in modifying each year's previous catalogue as described above in paragraphs nos. 10 and 11.

15. Since 1999, Cedar Graphics, an Iowa firm, printed the annual catalogues. Before that a now dissolved printing company, Wagner, did the printing.

16. Register would pay Sweets directly for Sweets' own charges in publishing its annual catalogues. Mr. Packer had no role in that arrangement.

17. Register ran its ad in Interior Design unchanged each year. Aside from two minor changes, Register ran the same Blue Book ad each year. These two minor changes involved the additions of a toll-free phone number and a web site address. Archie Packer, acting on Register's behalf, notified Blue Book of these changes. Blue Book did not charge for these changes. Aside from providing notice of these two changes, Archie Packer had no role in modifying or consulting on the annual ads in Blue Book and/or Interior Design.

18. Register had a uniform arrangement with Ropack regarding paying the annual bills from Blue Book, Interior Design, Cedar Graphics and Wagner. Under this arrangement Archie Packer acted as disbursing agent and was allowed to take a commission from the printer.

19. Archie Packer arranged for Cedar Graphics, Wagner, Blue Book and Interior Design to send its bills for Register's ads directly to Ropack without copies going to Register.

20. Register relied on Archie Packer's representation that he was not charging Register anything above the amounts of the invoices he was receiving from Wagner, Cedar Graphics, Blue Book and Interior Design.

21. Before Mr. Packer's death, he sent Register a bill for $35,000 for Cedar Graphics' printing of the 2003 inserts and a bill for $16,716.00 for Blue Books' printing Register's 2003 ad.

22. After Mr. Packer's death in December of 2002, Dianne Kavanagh became concerned about making sure that Cedar Graphics would deliver the catalogues to Sweets and Register and that the 2003 ads would be run in Blue Book and Interior Design. She came into direct contact for the first time with Cedar Graphics, Blue Book and Interior Designs about their work and bills.

23. On speaking with Cedar Graphics and Blue Book, Ms. Kavanagh learned for the first time that Cedar Graphics' bill for 2003's work was $19,922.00 and that Blue Books' bill for 2003 was $9,400, and that Archie Packer had deceptively padded his bill to Register.

24. Dianne Kavanagh then requested copies of prior years' bills from Cedar Graphics and Blue Book and compared them with the corresponding bills Ropack and Archie Packer had delivered to Register over the years. She then discovered that Mr. Packer had wrongfully and deceptively padded each year's bills to defraud Register and unjustly enrich himself and Ropack.

25. Register had justifiably relied on Archie Packer's representations that, except for the billing described in paragraphs nos. 10 and 11, he was charging Register no more money than Cedar Graphics, Wagner and Blue Book charged Ropack.

26. On information and belief, based on analysis of documents, including comparison of Ropack's invoices to Register with Cedar Graphics' and Blue Book's invoices to Ropack, Archie Packer defrauded Register and unjustly enriched himself in an amount in excess of $200,000 by padding the annual Cedar Graphics and Blue Book printing charges.

27. Archie Packer deceptively and fraudulently billed Register for catalogue modification work that he did not perform. On information and belief, based on analysis of Cedar Graphics' bills to Ropack for annual catalogue modification work falsely claimed to have been done by Ropack in its bills to Register, Archie Packer fraudulently and deceptively overcharged Register and enriched himself and Ropack by approximately $5,000 per year for fifteen years, totaling approximately $75,000.

28. On information and belief, during 2001 and 2002 Archie Packer resided in Massachusetts for more than half of each calendar year.

29. On information and belief, from 1990 through 2002 Archie Packer resided in Massachusetts for more than half of each calendar year.

30. On information and belief, during 2001 and 2002 Archie Packer conducted the majority of his business from a residence in Massachusetts and derived the majority of his business income from such Massachusetts business operations.

31. On information and belief, from 1990 through 2002 Archie Packer conducted the majority of his business from a residence in Massachusetts and derived the majority of his business income from such Massachusetts business operations.

32. On information and belief, Archie Packer was obligated to file a Massachusetts income tax return for the year 2001.

33.  On information and belief, Archie Packer's estate was obligated to file a Massachusetts income tax return for the year 2002.

34. On information and belief, Archie Packer was obligated to file a Massachusetts income tax return for all years from 1990 through 2001.

35.  On information and belief, Archie Packer did not file a Massachusetts income tax return for any year from 1990 through 2001.

36.  On information and belief, Archie Packer's estate did not file a Massachusetts income tax return for the year 2002.

37.  On information and belief, Archie Packer filed a Florida income tax return for the year 2001.

38.  On information and belief, Archie Packer's estate filed a Florida income tax return for the year 2002.

39. On information and belief, Archie Packer filed Florida income tax returns for the years 1990 through 2001.

40. On information and belief, Archie Packer did not pay Massachusetts income taxes on any business income he earned from 1990 until his death.

## COUNT I – FRAUD

41. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 40 with the same force and effect as if set forth herein at length.

42. Archie Packer falsely and fraudulently represented to Register that he had performed services entitling him to payments of the amounts Register was billed.

15

43. Archie Packer falsely and fraudulently billed Register for monies that he had not earned, for which he had performed no services, and to which he was not entitled.

44. Archie Packer's representations and bills to Register were false in fact and known to be false at the time they were delivered and made, and Archie Packer knew he was not entitled to amounts billed to Register.

45. Register relied upon these false representations and bills to its detriment, believing them to be true, and was thereby induced to make payments on these bills causing damages in the amount of $275,000 or more.

COUNT II – INTENTIONAL MISREPRESENTATION

46. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 45 with the same force and effect as if set forth herein at length.

47. Archie Packer falsely and fraudulently represented to Register that he had performed services entitling him to payments of the amounts Register was billed.

48. Archie Packer falsely and fraudulently billed Register for monies that he had not earned, for which he had performed no services, and to which he was not entitled.

49. Archie Packer's representations and bills to Register were false in fact and known to be false at the time they were delivered and made, and Archie Packer knew he was not entitled to amounts billed to Register.

50. Register relied upon these false representations and bills to its detriment, believing them to be true, and was thereby induced to make payments on these bills causing damages in the amount of $275,000 or more.

## COUNT III – NEGLIGENT MISREPRESENTATION

51. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 50 with the same force and effect as if set forth herein at length.

52. Archie Packer negligently misrepresented to Register that he had performed services entitling him to payments of the amounts Register was billed.

53. Archie Packer negligently billed Register for monies that he had not earned, for which he had performed no services, and to which he was not entitled.

54. Register, relying upon Archie Packer's negligent misrepresentations, was thereby induced to make payments on these incorrect bills causing damages in the amount of $275,000 or more.

## COUNT IV – BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

55. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 54 with the same force and effect as if set forth herein at length.

56. Archie Packer, by his breach of his agreement with Register, fraud and misrepresentations, breached the implied covenant of good faith and fair dealing.

57. As a result of Archie Packer's breach of the implied covenant of good faith and fair dealing, Register suffered damages in the amount of $275,000 or more.

## COUNT V – UNJUST ENRICHMENT

58. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 57 with the same force and effect as if set forth herein at length.

59. Archie Packer unjustly enriched himself at the expense of Register in the amount of $275,000 or more.

## COUNT VI – BREACH OF CONTRACT

60. Register repeats and realleges each and every allegation in paragraphs of its counterclaim numbered 1 through 59 with the same force and effect as if set forth herein at length.

61. Archie Packer breached his contractual agreement with Register by, among other things, deceptively billing for monies that he had not earned and was not entitled to.

62. Archie Packer's breach of contract caused damages to Register in the amount of $275,000 or more.

## COUNT VII – BREACH OF IMPLIED CONTRACT

63. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 62 with the same force and effect as if set forth herein at length.

64. Register had an implied contract with Archie Packer that provided, among other things, that Archie Packer would bill Register only for services he performed, and would not mark up the bills from Wagner, Cedar Graphics, Blue Book and Interior Design.

65. Archie Packer breached his implied contractual agreement with Register by, among other things, deceptively billing for monies that he had not earned and was not entitled to.

66. Archie Packer's breach of implied contract caused damages to Register in the amount of $275,000 or more.

COUNT VIII – PUNITIVE DAMAGES

67. Register repeats and realleges each and every allegation in paragraphs of its Counterclaim numbered 1 through 66 with the same force and effect as if set forth herein at length.

68. Archie Packer acted willfully, wantonly, recklessly and maliciously in damaging Register in the amount of $275,000 or more and Register demands triple that amount as punitive damages.

COUNT IX – VIOLATION OF M.G.L. Ch. 93A

69. Register repeats and realleges each and every allegation in paragraphs of its counterclaim numbered 1 through 68 with the same force and effect as if set forth herein at length.

70. At all relevant times, Archie Packer engaged in a trade or business in Massachusetts.

71. At all relevant times, Archie Packer engaged in unfair and deceptive practices in trade or business in violation of the provisions M.G.L. Ch. 93A, §1 et. seq., including §2 and §11, and thereby caused substantial economic harm and damage to Register.

72. Archie Packer's unfair and deceptive conduct in causing substantial economic harm to Register was knowingly and willfully performed.

WHEREFORE, Register, the plaintiff in Counterclaim, respectfully demands that the Court:

(1)    Award judgment in its favor and against Rhoda Packer, as Executrix of the Estate of Archie Packer, on Counts I through VIII in an amount to be determined at trial, plus punitive damages, interest, costs and attorney fees and such other relief deemed just;

(2)    Award judgment in its favor and against Rhoda Packer, as Executrix of the Estate of Archie Packer, on Count IX, and that this Court find and determine that the actions and omissions of Archie Packer were unfair and deceptive trade or business practices, and award multiple damages and attorney fees pursuant to M.G.L. Ch. 93A.

(3)    Grant such additional relief as the interests of justice demand.

**THE DEFENDANT/PLAINTIFF IN COUNTERCLAIM DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE**

Register & Grille Manufacturing Co, Inc.
By their Attorney,


/s/ Keith Halpern
_____

Keith Halpern
BBO # 545282
4 Longfellow Place, 37th Floor
Boston, MA 02114
(617) 722-9952